IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) Civil Action No: 15-cv-05843-JCJ |
| SUMMIT TRUST COMPANY, RAMPART CAPITAL MANAGEMENT, LLC, TRUST COUNSELORS NETWORK, INC., BROWN INVESTMENT ADVISORS, INC. KEVIN C. BROWN, and GEORGE P. BROWN, | ) ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| and | ) ) |
| RAMPART FUND LP, WEALTH MAINTENANCE ORGANIZATION, LLC, and HODDINOTT FARM DEVELOPMENT, LLC, | ) ) ) ) ) |
| Relief Defendants. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S UNOPPOSED MOTION FOR AN ORDER TERMINATING THE RECEIVERSHIP, DISCHARGING THE RECEIVER AND OTHER RELIEF**

The Securities and Exchange Commission ("Commission" or "SEC") respectfully submits this Memorandum of Law in support of its Unopposed Motion for an Order Terminating the Receivership, Discharging the Receiver and for other Relief, specifically instructing the Receiver, Ricardo J. Zayas, to produce a final accounting and to turnover all of the funds (after paying the

final Court approved fees and expenses of the Receiver and its counsel) on hand to the SEC. The Receiver should be discharged, because he has substantially completed the tasks with which the Court charged him in November 2015. Moreover, the SEC is capable of handling the remaining issues in a more efficient and less costly manner than the Receiver. The Receiver does not oppose this motion, and consents to the terms set forth in the proposed Order.

## FACTS

### The SEC's Judgment Against Summit Trust Company, Trust Counselors Network and Rampart Fund LP

On October 27, 2015, the SEC filed a settled civil injunctive action against the above named Defendants. The Complaint and related Judgement were filed in the United States District Court for the Eastern District of Pennsylvania. As part of this settlement the Defendants agreed they had used Summit Trust Company, et al. to facilitate a fraud from 2008 through 2014. As part of the fraud the Defendants raised over $33 million from investors in multiple states. While representing that the proceeds would be used for business expansion and acquisitions, the Defendants used most of the proceeds to make Ponzi-like payments to existing preferred stock shareholders, to cover obligations and expenses of the Defendants' other affiliated entities, and for undisclosed speculative investments. As part of the settlement, the Defendants also agreed to disgorgement of certain amounts and to the entry of civil Judgements (including interest) against Summit Trust Company, Trust Counselors Network and Rampart Fund, LP totaling more than $35,000,000.

### The Receiver's Appointment

On November 24, 2015, this Court entered an order (the "Order") in the above-captioned action, which among other things, established the receivership of Defendants Summit Trust Company ("STC"), Trust Counselors Network, Inc. ("TCN") and Relief Defendant Rampart Fund,

LP ("Rampart," collectively with STC and TCN, the "Receivership Parties") and appointing the Receiver in this matter (**Exhibit A**). Under paragraph 6 of the Order, the Receiver was authorized to take custody of all Receivership property; identify assets of each of the Receivership Parties; manage and maintain the Receivership properties and take actions necessary and appropriate for the preservation of Receivership property.  Upon the entry of the Order, the Receiver assumed day-to-day operational control of STC which served as custodian for more than 3,000 self-directed or advisor-directed trust accounts.  These trust accounts included individual IRAs and other trust vehicles with reported assets of more than $230,000,000.  Since November 2015 the Receiver and staff operated STC and serviced these trust accounts.  The active servicing referred to herein entailed:

- Daily oversight of STC business operations including monitoring of accounts payable, consultation on selected trust operations, participation in meetings, interaction with trust clients and consultation on tax compliance matters.
- Ongoing communications with the Nevada FID and other regulatory authorities to address relevant issues; and
- Inspection of available hardcopy and electronic records to improve operational knowledge and, as warranted, respond to client and U.S. government requests.

Account analyses undertaken to facilitate the transfer of STC client accounts yielded an enhanced understanding of STC's historical business operations and determined that the Defendants had not operated STC with a for-profit motive.  This analysis also determined that STC had:

- Materially overstated the number of active accounts with valuable assets; and

- Failed to reconcile the STC trust bank accounts (i.e. client funds) to the client account system (i.e. Accutrust Gold). In March 2015 the STC client accounts were overdrawn by at least $342,459. The overdraft condition was partially reduced when Rampart assets were liquidated and remitted to STC.

Ultimately, as part of his duties, the Receiver facilitated the transfer of more than 900 client accounts to Austin Capital Trust Company ("ACTC"). In general, the transferred accounts contained valuable assets. Following the transfer to ACTC the Receiver and staff took measures to identify and transfer remaining client accounts to new custodians.

In May 2018, the Receiver was notified by ACTC that ACTC had not been successful in formalizing account relationships with approximately 430 former STC clients due to inability to locate / secure responses from these former STC clients or, at times, refusal by these former STC clients to enter into Trust and custodial agreements with ACTC. ACTC returned more than $2,500,000 of cash and other assets relating to these former STC clients to the custody of the Receiver.

With the return of accounts by ACTC the Receiver was required to perform the following activities during the balance of 2018 and continuing through 2019.

- Account for and organize information for the accounts and assets returned by ACTC;
- Continue efforts to transfer accounts and related assets for STC clients including those returned by ACTC. These activities included efforts to transfer assets in an Australian firm held by approximately 225 STC clients;
- Coordinating with regulatory and law enforcement authorities, as required; and

- Responding to STC client inquiries and addressing other issues as they arose.

During 2018, the Receiver became involved in efforts to assist STC clients to recover investments in so-called "viaticals." The STC entities had placed client funds in these products. The promoters / sponsors of these products had filed for bankruptcy protection in the 2015 time period. In late 2018 and early 2019 the Receiver was notified that the Trust formed by the bankruptcy court had begun distributions to former STC clients. The Receiver became involved with facilitating distributions to these clients. Throughout the term of the Receivership, the Receiver made efforts to recover investments held by STC or STC clients with various entities including Forefront Talking Capital, Snowden Capital, Adcor Industries, Unation, Hoddinot Farms, LLC and Nevada Mining Company. The extent of these recovery efforts was impaired due to availability of funds. As previously reported, a $6,000,000 default by Forefront Talking Capital adversely impacted STC clients and STC operations. Given this lack of resources, the Receiver discontinued most efforts to recover investments made by STC with client funds. The Receiver is continuing to pursue recovery of the Adcor investment and STC's investment in a performing real estate operation. The Adcor appeal of a lower Court decision is pending. The aforementioned real estate operation is being actively marketed for sale. The Receiver and staff continue to assist the SEC and other U.S. government agencies in their efforts to pursue certain matters. At the inception of the Receivership the Receiver suspended all TCN and Rampart business activity. Subsequent inspection and analysis of TCN records determined:

- The TCN client universe differed from STC and Rampart. TCN accounts were usually established with charitable contributions in order to pursue some charitable endeavor and/or charitable remainder trusts established to provide annuity income to the grantor;

- TCN did not adhere to titling conventions or prescribed business practices when soliciting and receiving funds from clients. In practice, TCN received client funds and used those client funds for business operations or to satisfy current obligations to other clients. TCN did not use client funds to acquire investment products that would enable TCN to meet client obligations.

- STC and TCN comingled business and client assets creating material overdrafts (i.e. negative cash balances) in client accounts. STC deposited at least $3,500,000 into TCN to meet TCN operating expenses and satisfy obligations to TCN note holders and annuitants. TCN returned approximately $1,200,000 to STC, leaving TCN obligated to STC in the approximate amount of $2,300,000, not including approximately $184,000 of benefit payments to TCN clients through the STC Client account (i.e. client account overdrafts); and

- These findings led to a Motion for an Order authorizing the Receiver to Combine Assets Held in Multiple Accounts into the Estate of Trust Counselors Network. This Motion was approved by the Court in March 2018. The Receiver began marshalling pertinent accounts and assets during the first calendar quarter of 2018.

Since his appointment in November 2015 the Receiver has filed fifteen reports in which he detailed the status of the sale of Receivership Assets. The Receiver has taken measures to liquidate Receivership Assets and pursue recovery efforts on behalf of the Receivership entities and STC clients as deemed viable. The Receiver is continuing to pursue recovery of the Adcor investment and Summit's investment in a performing real estate operation. The Receiver and staff are also continuing to assist the SEC and other U.S. government agencies in their efforts to pursue certain matters.

As of August 1, 2020 the Receiver has worked to recover and distribute client assets valued at more than $220,000,000.

**ARGUMENT**

**The Receivership Should Be Terminated Because the Receiver Has Substantially Completed the Tasks the Court Assigned It and No Further Benefit to Creditors Would Accrue from Continuing as Receiver**

The federal securities laws confer broad equity powers upon the district courts.[1] Those powers include the power to appoint a receiver.[2] A "primary purpose of appointing a receiver is to conserve the existing estate . . . while the various transactions [are] unraveled . . . to obtain an accurate picture of what transpired."[3] Also committed to the discretion of the Court is the decision whether to discharge the Receiver.[4] If the reasons for the Receiver's appointment no longer exist, the Court should discharge it.[5] In this case, the Receiver has substantially completed the tasks assigned to it by the Court.  The Receiver has liquidated nearly every valuable asset—except for an investment interest in a real estate operation and one recovery claim being pursued in litigation.[6] The Receivership remains open to collect restitution payments, determine if any viable claims exist and assist the SEC or other Government entities in ongoing recovery efforts.  The SEC, as the claimant next in line to receive proceeds, is well-positioned to handle each of these issues in a more cost-effective manner.  Accordingly, nothing remains for the Receiver to do except provide a final accounting and turnover all of the funds

---

[1] *In re Bayou Group, LLC*, No. 06-Civ-6837 (CM), 2007 WL 437675, at * 8 (S.D.N.Y. Feb. 5, 2007) (citing *SEC v. Manor Nursing Ctrs, Inc.*, 458 F.2d 1082, 1103 (2d Cir. 1972)).
[2] *Id*. at *9 (citing *SEC v. Am. Bd. Of Trade, Inc*., 830 F.2d 431, 436 (2d Cir. 1987)).
[3] *Am. Board of Trade*, 830 F.2d at 436 (quotations omitted).
[4] *SEC v. Spence & Green Chemical Co*., 612 F.2d 896, 904 (5th Cir. 1980).
[5] *Id*.
[6] Proceeds of which will be remitted to the Receiver in partial satisfaction of outstanding fees.

(after paying the final Court approved fees and expenses of the Receiver and its counsel) on hand to the SEC.

## CONCLUSION

For all the foregoing reasons, the Commission respectfully requests that the Court enter an Order Terminating the Receivership, Discharging the Receiver, and for other Relief, specifically requiring the Receiver to submit a final accounting and turnover all of the funds (after paying the final Court approved fees and expenses of the Receiver and its counsel) on hand to the SEC.

Dated:  January 28, 2021

Respectfully submitted,

s/Stephen C. McKenna
Stephen C. McKenna
Michael J. Roessner
Attorneys for Plaintiff
United States Securities and Exchange Commission
100 F Street, N.E., Mail Stop 5631
Washington, D.C. 20549
Tel:  (303) 844-1036
Fax:  (303) 297-3529
Email:  mckennas@SEC.gov
            roessnerm@sec.gov

## CERTIFICATE OF SERVICE

I hereby certify that on January 28, 2021, I electronically filed the foregoing Memorandum Of Law with the Clerk of Court using the CM/ECF system.

Natalie Ramsey, Esq
MONTGOMERY, MCCRACKEN,
WALKER & RHOADS, LLP
123 South Broad Street
Philadelphia, PA 19109
215-772-1500
Email:  nramsey@mmwr.com
*Counsel for Ricardo J. Zayas, Receiver forThe Receivership Estates of Defendant Summit Trust Company and Trust Counselors Network, Inc.and Relief Defendant Rampart Fund LP*

Ricardo J. Zayas MARCUM LLP
1600 Market Street, 32nd Floor
Philadelphia, PA 19103
215-297-2320
Email:  ricardo.zayas@marcumllp.com
*Receiver for The Receivership Estates ofDefendants Summit Trust Company and Trust Counselors Network, Inc. and Relief Defendant Rampart Fund LP*

Kevin C. Brown
1904 Hilltown Pike
Hilltown, PA 18927
Email:  kevin@secondhalfllc.com
*Authorized Representative of Defendants Rampart Capital Management, LLC and Brown Investment Advisors, Inc. and Relief Defendant Hoddinott Farm Development, LLC*

George P. Brown
13 Langhorne Road
Chalfont, PA 18914
Email:  Georgepbrown201@gmail.com
*Authorized Representative of Defendants Rampart Capital Management, LLC and Brown Investment Advisors, Inc. and Relief Defendant Wealth Maintenance Organization, LLC*

/s/ *Scott Wesley*
Contract Paralegal